UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MELISSA GRAN,
  Plaintiff,

v.                 CIVIL NO. 3:14-cv-1632(VAB)

TD BANK, NA,
  Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TD Bank, NA ("TD Bank" or the "Bank") terminated Melissa Gran's employment, because it claims that it believed she cashed checks for certain Bank clients in a way that violated the Bank's policies. Ms. Gran claims that the Bank terminated her because she was a woman with young children and therefore, discriminated against her on the basis of her gender in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1). Compl. at First Count, ECF No. 1-1. She also brings a negligent infliction of emotional distress claim against the Bank for its conduct surrounding her termination. *Id.* at Second Count.

TD Bank has moved for summary judgment on both claims. Mot. for Summ. J., ECF No. 45. For the reasons that follow, TD Bank's motion is **GRANTED** with respect to Ms. Gran's negligent infliction of emotional distress claim and **DENIED** with respect to her CFEPA claim.

### I. STATEMENT OF FACTS

Ms. Gran began working for TD Bank in April 1999. Def.'s Ex. B, Gran Dep. 24:12-14, ECF No. 47-2. Most recently, and during the time period relevant to this lawsuit, Ms. Gran worked as a store manager of the Bank's downtown Hartford location.

1

Def.'s Local Rule 56(a)1 Stmt. ¶ 16, ECF No. 47.[1]  In this role, Ms. Gran had "overall responsibility for the store," which included overseeing the Bank's operations, implementing the Bank's policies and procedures, and directing employees about the same.  *Id.* ¶¶ 19-20.  While employed there, she also had two children, one born in January 2008, and the other in February 2013.  *Id.* ¶ 17.

Ms. Gran generally received positive reviews for her job performance.  *Id.* ¶ 21.  But Ms. Gran and her supervisors agree that "operations," or ensuring that policies and procedures were followed consistently, was a weak area of her performance.  *Id.*; Def.'s Ex. B, Gran Dep. 38:19-40:4, 52:16-24, ECF No. 47-2.[2]

TD Bank has a number of written policies governing check cashing.  One of these policies, known as the TD Bank Check Cashing Policy, provides that checks payable to a business entity must be deposited into an account owned by that business and may not be cashed.  Def.'s Local Rule 56(a)1 Stmt. ¶ 10, ECF No. 47.  Another, known as the Standard Funds Availability Policy, provides that the first $100 of a customer's non-cash deposits are available immediately and the remaining funds are available no later than the next business day, subject to certain exceptions.  *Id.* ¶ 12.  These policies are intended to save the Bank money, in case of bounced checks, and to ensure compliance with banking regulations.  *Id.* ¶¶ 7, 13.

---

[1] Ms. Gran denies a number of the statements made in TD Bank's Local Rule 56(a)1 Statement without citing contrary evidence or adequately explaining the basis for the Court not considering the evidence.  *See e.g.*, Pl.'s Local Rule 56(a)2 Stmt. ¶¶ 38, 43, ECF No. 52-24.  The District of Connecticut's Local Rules, however, require that "each denial in an opponent's Local Rule 56(a)2 Statement[ ] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial "  D. Conn. L. Civ. R. 56(a)3.  Under this standard, the Court deems these statements admitted for the purposes of evaluating this motion, to the extent they are supposed by admissible record evidence.

[2] Ms. Gran disagrees with TD Bank's characterization of her job performance and argues that she was an exceptional employee with consistently excellent reviews.  Pl.'s Opp. Br. 4, 18, ECF No. 52.  Her performance evaluations suggest that she often received a high rating but not the highest available.  *See e.g.*, Def.'s Exs. A-10-A-14, ECF No. 47-1; Pl.'s Ex. 2, Performance Reviews, ECF No. 52-2.

In April 2013, while Ms. Gran was out on maternity leave after the birth of her second child[3], a Corporate Security Senior Investigator at TD Bank named Mario Rosa discovered a small business account "out of" Ms. Gran's branch location which was overdrawn by over $5,000. *Id.* ¶¶ 23-24. The Bank's Corporate Security Department is responsible for investigating any issues that place the Bank at risk, including fraud and other types of illicit account activities. Def.'s Ex. B, Gran Dep. 107:15-19, ECF No. 47-2. As a result of being overdrawn, the account was placed on "No Check Activity status," which blocked all checks and other withdrawals from posting to the account. Def.'s Local Rule 56(a)1 Stmt. ¶ 23, ECF No. 47. This status also triggered an extended wait time, past the next business day, before funds deposited by check could be made available to the account holder. *Id.*

Mr. Rosa followed up about this overdrawn account with Assistant Store Manager Sabina Vegiard, who was filling in for Ms. Gran as store manager while she was out on maternity leave. *Id.* ¶ 24. Mr. Rosa testified that Ms. Vegiard told him the branch often made funds available to this particular client, known as PM Business in this lawsuit, even though the account was overdrawn, because they knew that the checks they cashed were "good." *Id.* ¶ 26.[4] He also testified that Ms. Vegiard indicated that, as a result, this customer paid roughly $12,000 in overdraft fees per year. *Id.*

---

[3] Ms. Gran was out on maternity leave for the birth of this child from February 2013 to May 2013. Def.'s Local Rule 56(a)1 Stmt. ¶ 25, ECF No. 47.

[4] Ms. Gran objects to the admissibility of these statements, arguing that they constitute hearsay. Pl.'s Local Rule 56(a)2 Stmt. ¶ 26, ECF No. 52-24. The Court agrees that these statements would be hearsay, if they were offered for the truth, but finds that instead, they are admissible because they are offered as evidence of Mr. Rosa's state of mind. Fed. R. Evid. 803(3) ("statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" is not excluded by the rule against hearsay); *see also e.g.*, *United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir. 1991) (evidence offered to demonstrate state of mind not hearsay); *see also e.g.*, *United States v. Garcia*, No. CIV. 3:97CR61(AHN), 1997 WL 409524, at *2 (D. Conn. July 3, 1997) (same).

3

Mr. Rosa referred the matter to a Regional Operations Officer, Francine Smith, for investigation. *Id.* ¶ 27.[5] Ms. Smith, along with Human Resources Manager Tara Celani, Ms. Gran's direct supervisor, Kristie Dammling, and Human Resources Business Partner Cheryl Wegraff conducted the investigation. *Id.* ¶¶ 16, 27, 32. All four of these individuals are women, who have children. *Id.* ¶¶ 18, 30, 35, 37.

To investigate the matter, TD Bank interviewed several employees and reviewed relevant account records. *Id.* ¶ 38.[6] The investigation revealed that Ms. Gran and other employees at her store regularly cashed checks made payable to PM Business and deposited these funds into the account as cash, making the funds immediately available. *Id.* ¶ 39. It also revealed that employees at the store cashed checks payable to PM Business's owner personally from the PM Business account, even if the account was overdrawn, and made those funds available immediately. *Id.* ¶ 42. The investigation showed that the Hartford branch employees followed a similar practice for at least one other customer, referred to as "DO Business" in the context of this case. *Id.* ¶ 47.

In one instance, TD Bank's teller computer system rejected a transaction because PM Business's account had insufficient funds, which caused a stop to be automatically placed on its account. *Id.* ¶ 45. Ms. Gran manually overrode the system, cashed the check in its entirety, and provided the customer with the amount of the check in cash. *Id.* ¶ 46. In another instance, she manually overrode the system to make funds available

---

[5] Ms. Gran denies this statement in her Local Rule 56(a)2 Statement, but she fails to cite any contrary evidence and to explain sufficiently why the evidence supporting this fact is inadmissible. Thus, it is deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3.

[6] Ms. Gran was interviewed as part of the investigation, but only after she returned from maternity leave, and Ms. Smith refused to speak with her about the investigation during her leave. Pl.'s Ex. 1, Gran Aff. ¶¶ 21-24, ECF No. 52-1; Pl.'s Ex 5, E-mail dated May 6, 2013, ECF No. 52-5; Def.'s Ex. B, Gran Dep. 132:18-21, 133:5-134:15, ECF No. 47-2. Ms. Gran testified that the meeting lasted thirty to forty-five minutes and that she was not shown any documents. Pl.'s Ex. 1, Gran Aff. ¶ 24, ECF No. 52-1.

more quickly to DO Business, after the computer system had placed a seven-day hold on the account because of several returned deposit items. *Id.* ¶ 48.

The findings of the Bank's investigation were elevated to the Senior Vice President of Retail Banking, Mauro Decarolis. *Id.* ¶ 56. Upon the recommendation of Ms. Celani and Ms. Weagraff, as well as Senior Vice President of Human Resources Shirley Haggarty, and Assistant Vice President of Employee Relations Kimberly Lovett, Mr. Decarolis decided to terminate Ms. Gran for violating TD Bank's check cashing policies. *Id.* ¶¶ 59, 62-63.[7] He also decided to terminate the rest of Ms. Gran's all-female management team for engaging in the same policy violations, which included Ms. Vegiard, Anh Dao Nguyen, and LaTasha Edwards. *Id.* ¶ 64. He did not terminate two other employees, Joseph Delcegno and Denisa Murtich, who engaged in similar conduct. *See* Pl.'s Ex. 20, Delcegno Aff. ¶¶ 7-9, 11-12, ECF No. 52-20; Def.'s Ex. A-15, E-mail dated June 24, 2013, ECF No. 47-1; *see also* Def.'s Ex. A-20, E-mail dated July 5, 2013 and Attached Spreadsheet, ECF No. 47-1.

Ms. Gran does not deny that the events revealed by the investigation occurred. Pl.'s Local Rule 56(a)1 Stmt. ¶55, ECF No. 52-24. But she contends that her conduct did not violate the Bank's policies, because she had discretion to make exceptions under those policies. *Id.* ¶¶ 10, 12, 13-14, 39, 42; *see also* Pl.'s Ex. 1, Gran Aff. ¶ 12, ECF No. 52-1 ("As Store Manager, I always had authority and discretion with regard to the[ ] policies, especially if it meant we could Wow! [t]he customer. TD Bank had a Wow! Philosophy which was very important to TD Bank."); Def.'s Ex. B, Gran Dep. 117:9-11,

---

[7] Ms. Haggarty and Ms. Lovett are women and Ms. Lovett has young children. Def.'s Local Rule 56(a)1 Stmt. ¶¶ 60-61, ECF No. 47.

5

ECF No. 47-2 ("There's a lot more information that's not included in this [written policy]. There are also policies on making exceptions.").

For example, she contends that it was common practice for managers, like herself, to e-mail a request to the Deposit Operations Department to make the funds deposited by check into an account available immediately and in full. Pl.'s Ex. 1, Gran Aff. ¶ 20, ECF No. 52-1; Def.'s Ex. B, Gran. Dep. 128:13-25, 130:12-131:6, ECF No. 47-2; *see also* Pl.'s Ex. 17, Overdraft Policy 1, ECF No. 52-17 ("On a rare occasion, Store Team Members with the appropriate approval level can request Deposit Operations to pay an item on an overdrawn account by emailing" a certain e-mail address).

She argues that a number of TD Bank managers operated in a similar way, applying various exceptions to the check cashing and funds availability policies at their discretion. She identifies a number of these other managers by name but could not recall any specific factual details about how or when they applied exceptions or discretion to TD Bank's policies. Def.'s Ex. B, Gran. Dep. 134:24-136:22, 139:3-140:1, 140:12-22, 141:2-14, ECF No. 47-2. The record contains no direct testimony from any other store manager corroborating Ms. Gran's view of TD Bank's policies.

Ms. Gran's direct supervisor, Ms. Dammling, told Ms. Gran that she was terminated at a meeting, with Ms. Weagraff present, on July 16, 2013. Def.'s Local Rule 56(a)1 Stmt. ¶¶ 67-70, ECF No. 47; Pl.'s Ex. 1, Gran Aff. ¶ 2, ECF No. 52-1. During the meeting, Ms. Dammling read from a script received from Ms. Celani. Def.'s Local Rule 56(a)1 Stmt. ¶ 71, ECF No. 47. The script read as follows:

> We have concluded our investigation regarding the
> business account practices here at the Hartford store. We
> appreciate your cooperation and candidness in the matter.
> At this time we have determined you have violated our

6

> bank policy regarding Check Handling Standards as outlined in the Store Performance and Transaction Handling Standards Guide and detailed on the WOW Answer Guide. As a result of approving improper check cashing methods you have jeopardized bank assets. Additionally, it is a violation of bank policy to both allow and instruct employees to conduct withdrawal transactions for business account holders with insufficient funds. Due to these violations we will be terminating your employment effective today.

*Id.* ¶ 72. Ms. Weagraff then went over the separation and benefits forms. *Id.* ¶ 73. She told Ms. Gran that her termination was "going to seem like a blip" in her life "someday" and "in the brief time that [she] got work with [Ms. Gran] it really was a pleasure. *Id.* Ms. Dammling also gave Ms. Gran a hug and asked her for her keys, access cards, and Blackberry. *Id.* ¶ 73. To obtain these items, which were in Ms. Gran's car, Ms. Smith walked Ms. Gran out to the back door and waited for her to return with the items. *Id.* ¶ 75.

Ms. Gran contends that the termination was "neither respectful nor sympathetic" and was "cold and calculating" but does not cite any particular incidents or behaviors that made her feel this way. Pl.'s Local Rule 56(a)1 Stmt. at Disputed Issues of Material Fact ¶ 32, ECF No. 52-24; Pl.'s Ex. 1, Gran Aff. ¶ 30, ECF No. 52-1.

After Ms. Gran's termination, Ms. Dammling told the TD Bank employees at the downtown Hartford location that Ms. Gran and her management team were "no longer with the bank" and that she would be working there until a permanent replacement could be found. Def.'s Local Rule 56(a)1 Stmt. ¶ 86, ECF No. 47. She also instructed them to tell any customers who asked about Ms. Gran and the other members of the management that they were no longer with the Bank, but that they could expect to receive the same level of service. *Id.*

7

TD Bank selected Matthew Cuddy, the former manager of the Bank's Hamden location, as the new manager of the downtown Hartford branch.  *Id.* ¶ 88.  Mr. Decarolis testified that he was involved in selecting the replacement because Hartford was a flagship store, and that TD Bank was "concerned about the brand in the neighborhood and making sure that [it] had the right candidate."  Pl.'s Ex. 14, Decarolis Dep. 61:18-62:6, ECF No. 52-14.

Sometime shortly after Mr. Cuddy assumed the manager position in the Hartford store, Ms. Dammling discovered that, when he managed the Hamden location, Mr. Cuddy had engaged in the same check cashing practices for which Ms. Gran had been terminated.  Def.'s Local Rule 56(a)1 Stmt. ¶ 95, ECF No. 47.  She reported the conduct to TD Bank, and the Bank terminated him.  *Id.* ¶ 96.  Timcia Hall replaced Mr. Cuddy as manager of the downtown Hartford location.  *Id.* ¶ 97.  Ms. Hall is a woman with young children.  *Id.* ¶ 98.

**II.     STANDARD**

A party who moves for summary judgment bears the burden of establishing that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law" and is

"genuine" if it could cause a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### III.   CFEPA (First Count)

CFEPA prohibits employers from, among other things, discriminating against an employee "because of the individual's . . . sex."  Conn. Gen. Stat. § 46a-60(a)(1). Generally, the analysis of discrimination claims under CFEPA is the same as under Title VII.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n. 6 (2002)).

To continue past summary judgment on a gender discrimination claim under CFEPA, a plaintiff must make out a prima facie case of discrimination.  *Abrams v. Dep't of Public Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (under Title VII); *Smith v. Conn. Packaging Materials*, No. 3:13-cv-00550 (JAM), 2015 WL 235148, at *2 (D. Conn. Jan. 16, 2015) (applying the same analysis to a CFEPA claim).  A prima facie showing consists of the following elements: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) that action "occurred under circumstances giving rise to an inference of discriminatory intent."  *Abrams*, 764 F.3d at 251-52; *Smith*, 2015 WL 235148, at *2.

Once a plaintiff has satisfied this burden, the employer "may then rebut the prima facie case by stating a legitimate nondiscriminatory jurisdiction for the employment decision in question."  *Craine*, 259 Conn. at 637; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  To continue past summary judgment, the employee must then

9

produce evidence raising an inference that the employer's reason is merely a pretext and that the decision was actually motivated by illegal discriminatory bias. *Craine*, 259 Conn. at 637 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973)).

Ms. Gran claims that TD Bank terminated her because she "had just returned from maternity leave" and is a woman with young children. Def.'s Ex. B, Gran Dep. 13:8-10, 14:6-9, ECF No. 47-2. Assuming for the purposes of this motion that Ms. Gran can meet her prima facie burden[8], TD Bank argues that summary judgment is appropriate because it has offered a legitimate, non-discriminatory reason for her termination that is neither false nor a pretext for discrimination. Def.'s Br. 16, ECF No. 46. It contends that Ms. Gran was terminated because she violated TD Bank's check cashing and funds availability policies, and not because of any gender-based discrimination. *Id.*

To survive summary judgment on the question of pretext, Ms. Gran must produce evidence from which a reasonable juror could conclude that TD Bank's real motivation for terminating her was discrimination. *See Hicks*, 509 U.S. at 516-17; *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446-47 (2d Cir. 1999). She may do so by relying solely on her prima facie case and producing evidence showing that TD Bank's proffered reason is unworthy of credence. *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 143, 146-48 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can

---

[8] The Court believes that TD Bank cannot dispute that Ms. Gran has shown that disputed facts exist on all of the elements of her prima facie case. She is a woman, who was terminated, and there is no record evidence suggesting that she was not qualified for her position. She also was replaced by a man. *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis.").

10

reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") (citation omitted); *see also Bd. of Educ. of Norwalk v. CHRO*, 266 Conn. 492, 510-11 (2003).  She may also produce evidence that, despite the truth of the legitimate explanation offered, her employer was ultimately motivated by discrimination.  *See Bickerstaff*, 196 F.3d at 447; *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010).

The ultimate inquiry in evaluating pretext is whether the totality of the circumstances presented by this particular record could support a reasonable inference that TD Bank terminated Ms. Gran because she is a woman.  *See Reeves*, 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated . . . it is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.") (internal quotation marks and citation omitted); *Prioleau v. Ryder's on Main, LLC*, No. 106015468S, 2016 WL 4150210, \*6 (Conn. Super. Ct. June 30, 2016) ("[T]he ultimate question is not whether the explanation was false but whether discrimination was the cause of the (job) termination.") (citation and internal quotation marks omitted).  Accordingly, Ms. Gran must provide some evidence that discriminatory intent played a role in her termination.  *See Henry*, 616 F.3d at 156-57.

Examining the totality of the circumstances, the Court finds that a reasonable juror could conclude that TD Bank's reason for terminating Ms. Gran was a pretext for gender discrimination.  First, Ms. Gran has produced evidence raising an inference that the reason TD Bank provided for terminating her was false.  Despite Ms. Gran's claims that TD Bank's policies enabled managers to exercise discretion in implementing them,

record evidence indicates that during its investigation, the Bank did not research this point in any way or interview any managers at other stores.  *See* Pl's Ex. 21, Dammling Dep. 68:7-16, 75:12-76:11, ECF No. 52-21**;** Pl.'s Ex. 13, Celani Dep. 66:6-17, ECF No. 52-13; Pl.'s Ex. 15, Smith Dep. 80:25-81:11, ECF No. 52-15.  The record also contains testimony from TD Bank managers, including those involved in the investigation and decision to terminate Ms. Gran, indicating that they knew some level of discretion applied to all of a manager's duties, including the policies at issue in Ms. Gran's termination.  *See e.g.*, Pl.'s Ex. 15, Smith Dep. 79:8- 80:2, ECF No. 52-15 (testifying that when funds are made available to a customer "depends on the length of time you have been a TD Bank customer. . . An exception to policy is not standard practice.  Q. But it can be done?  A. Yes"); Pl.'s Ex. 21, Dammling Dep. 47:15-24, 54:7-15, 55:9-11 ECF No. 52-21 (testifying that there are "exceptions" to the funds availability policy and "a variety of factors" go into determining how long the bank will hold a check before making funds available, including "[t]he age of the account, the history of the account, size of deposits, pattern of deposits," and whether the account was in good standing); Pl.'s Ex. 14, Decarolis Dep. 39:8-13, ECF No. 52-14 (testifying that when funds are made available to customers is based on "the relationship we have with the customer, based on the origins of funds, based on history . . . when funds are available could fluctuate based on relationship . . . .").

  Most importantly, TD Bank failed to investigate the Hartford branch's replacement manager, Mr. Cuddy, to determine how he applied these policies.  If adherence to these policies was significant enough that a violation warranted Ms. Gran's termination, a reasonable juror could conclude that their failure to investigate Mr.

Cuddy's past conduct calls into question TD Bank's stated motive for terminating Ms. Gran. The fact that TD Bank did not accept applications for Ms. Gran's position only raises more questions about why they did not verify that Mr. Cuddy had not and would not engage in the same policy violations. Mr. Decarolis also testified that finding the "right" candidate for this position was very important to the Bank, which would allow a jury to infer that the Bank's conduct on both these issues was even more puzzling and perhaps, even discriminatory.

Ms. Gran also has produced sufficient evidence that TD Bank treated women, in general, and Ms. Gran, in particular, in a different and potentially discriminatory manner. First, a male replaced her, which is sufficient evidence to raise an inference of discrimination at the prima facie stage. *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

In addition, while Ms. Gran was out on maternity leave from February to May 2013, one of Ms. Gran's female colleagues, Ms. Celani made a potentially discriminatory comment to Ms. Vegiard, who also was fired along with Ms. Gran. At the time, Ms. Celani and Ms. Dammling were meeting with Ms. Vegiard to discuss an unrelated "corrective action plan" and raised the issue of balancing work and childcare responsibilities. Pl.'s Ex. 4, Viegard Aff. ¶¶ 4-5, ECF No. 52-4. During this conversation, Ms. Dammling reminded Ms. Vegiard that she had been out of the office twice in the past two months to take care of her sick children. *Id.* ¶ 5. When Ms. Viegard said that she had taken paid time off and arranged coverage during her absences, Ms. Dammling and Ms. Celani told her that because she was salaried, she was "always on the clock." *Id.* ¶ 5. Ms. Celani also suggested that "maybe you should look for a part-time

job" so Ms. Vegiard could spend more time with her family. *Id.* ¶ 6. Ms. Vegiard reported the comments to Human Resources, but Ms. Celani was promoted to a position in the Human Resources Department before the complaint could be addressed. *Id.* ¶¶ 7-11.

In assessing whether remarks like these are probative of discriminatory intent, courts evaluate "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry*, 616 F.3d at 149. None of these factors are dispositive alone. *Id.* at 150.

Here, three of these four factors favor finding that the remarks made to Ms. Vegiard are relevant to the motivation behind Ms. Gran's termination. Ms. Dammling and Ms. Celani both investigated Ms. Gran's conduct, and Ms. Celani recommended her termination. These comments were also made sometime between February and May 2013, while Ms. Gran was on maternity leave, just before the investigation began that led to her termination. A reasonable juror could also conclude that they were of a discriminatory nature. Accordingly, in conjunction with other evidence, they can support an inference of discriminatory intent. *See e.g.*, *Nizami v. Hartford Fin. Servs. Grp., Inc.*, No. 3:10cv970(SRU), 2012 WL 3596482, at \*6 (D. Conn. Aug. 20, 2012) (holding that several potentially discriminatory remarks made by the relevant decision maker but not directly relating to the decisional process at issue gave rise to an inference of discriminatory intent); *see also Rathbone v. CVS Pharm., Inc.*, No. 3:03CV1578(DJS),

2006 WL 1359191, at *7 (D. Conn. May 12, 2006) (denying summary judgment where plaintiff "may be able to establish a nexus between the alleged comments and the adverse action taken against her" because the statements were made by the decision maker, specifically about the plaintiff, and the remarks were made relatively close in time to plaintiff's leave and termination).

Finally, the fact that Mr. Cuddy was not investigated prior to his move into the manager position at the Hartford store in the same way that Ms. Gran was raises an inference of gender-based discrimination. A plaintiff can raise an inference of discrimination by showing that an employer treated her "less favorably than a similarly situated employee outside [her] protected group." *Prioleau*, 2016 WL 4150210, at *4 (citing *Ruiz v. City of* Rockland, 609 F.3d 486, 492 (2d Cir. 2010)). Here, Ms. Gran and Mr. Cuddy were similarly situated, because they were employed in the same position, were different genders, and were treated differently.

While there is some record evidence indicating that Ms. Hall was also considered for the manager position after Ms. Gran's termination, this fact alone does not provide a sufficient basis to deny summary judgment. *See e.g.*, Pl.'s Ex. 14, Decarolis Dep. 48:21-23, ECF No. 52-14; *cf. Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."). In addition, TD Bank did terminate Mr. Cuddy ultimately for his conduct, but it did so after Ms. Gran had filed her complaint with the Commission on Human Rights and Opportunities and sent correspondence to the Bank through her counsel. Pl.'s Local Rule 56(a)2 Stmt. at Disputed Issues of Material Fact ¶¶ 36-37, ECF No. 52-24.

Thus, a reasonable juror could still infer that the disparate treatment of Mr. Cuddy and Ms. Gran was more than mere negligent error but rather amounted to discrimination.

Because Ms. Gran has produced evidence that TD Bank's reason for terminating her was false and this evidence may support an inference of discrimination, summary judgment must be denied.  *See Reeves*, 530 U.S. at 148; *Zimmerman*, 251 F.3d at 382-83 (affirming a denial of summary judgment where plaintiff had "extremely substantial" evidence that the employer's legitimate reason was false and "slight" evidence, beyond her prima facie case, of discriminatory animus).

## IV.     Negligent Infliction of Emotional Distress (Second Count)

Ms. Gran also claims that she suffered emotional distress arising from her termination.  To survive summary judgment on her negligent infliction of emotional distress claim, Ms. Gran must show that genuine issues of material fact exist with respect to all of the following elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

Connecticut law recognizes a claim for negligent infliction of emotional distress in the employment context only where it is based on "unreasonable conduct of the defendant in the termination process."  *Morris v. Hartford Courant Co.*, 200 Conn. 676, 681-82 (1997).  The termination of an employee, even for false reasons, cannot sustain a negligent infliction of emotional distress claim unless the employer does something out of the ordinary that "transgress[es] the bounds of socially tolerable behavior."  *Parsons v.*

16

*United Techs. Corp.*, 243 Conn. 66, 89 (1997) (citation and internal quotation marks omitted); *Chieffalo v. Norden Sys., Inc.*, 49 Conn. App. 474, 480-81 (1998) (affirming the grant of a motion for judgment notwithstanding the verdict on a negligent infliction of emotional distress claim because "[t]here was no evidence that the manner of the plaintiff's termination from employment was different in any way from the usual termination of employment or that it was done in any way that would cause anything more than the normal upset that would result from any termination of employment.")

Ms. Gran contends that disputed questions of fact preclude summary judgment on her claim because her termination caused reputational damage and financial stress. Def.'s Local Rule 56(a)1 Stmt. ¶¶ 130-31, ECF No. 47.  She particularly objects to the way her termination was shared with other TD Bank employees in a conference call. *Id.* But none of these events "transgress[ed] the bounds of socially tolerable behavior." *See Parsons*, 243 Conn. at 89; *Larobina v. McDonald*, 274 Conn. 394, 410m(2005) (noting that the test for a negligent infliction of emotional distress claim requires "'the fear or distress experienced by the plaintiff[ ] be reasonable in light of the conduct of the defendants… [such that] the defendant[ ] should have realized that [its] conduct created an unreasonable risk of causing distress, and [it], therefore, properly would be held liable.'") (quoting *Carrol*, 262 Conn. at 447).  No inappropriate comments were made to Ms. Gran during the termination.  The fact that Ms. Dammling read from a script may have made the termination feel impersonal to Ms. Gran, but it was not so unreasonable as to cause Ms. Gran unwarranted emotional distress.  There is also no evidence suggesting that the conference call in which Ms. Gran's termination was shared with some Bank employees was humiliating, embarrassing, or otherwise unreasonable.

17

Ms. Gran also claims that TD Bank's failure to investigate her conduct and provide her with a sufficient opportunity to contest her termination show that disputed issues of fact exist on her claim. Pl.'s Opp. Br. 35, ECF No. 52. But the mere fact that Ms. Gran disagreed with the reasons for her termination does not sustain a negligent emotional distress claim. *See Parsons*, 243 Conn. at 88-89. Moreover, conduct that occurred during the course of a plaintiff's employment, like the investigation prior to Ms. Gran's termination, cannot support a negligent infliction of emotional distress claim. *See Perodeau v. City of Hartford*, 259 Conn. 729, 758, 762-63 (2002) (holding that an employer "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment."). In any case, even if this Court could consider TD Bank's conduct during the investigation, none of its actions were so humiliating, embarrassing, egregious, or unusual to support a finding that the Bank negligently inflicted emotional distress on Ms. Gran. Accordingly, the Court grants summary judgment on Ms. Gran's negligent infliction of emotional distress claim.

## V. CONCLUSION

For all of the foregoing reasons, TD Bank's Motion for Summary Judgment, ECF No. 45, is **GRANTED IN PART** and **DENIED IN PART**. The Court dismisses Ms. Gran's negligent infliction of emotional distress claim. Her claim of gender-based discrimination under CFEPA may proceed to trial.

**SO ORDERED** this second day of September 2016 at Bridgeport, Connecticut.


　　　　　　　　　　　　　　　　　　　　 /s/ Victor A. Bolden
　　　　　　　　　　　　　　　　　　　　VICTOR A. BOLDEN
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE